United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 26, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-80180 |
| OTIS DEAN NEZAT, | § | |
| | § | CHAPTER 13 |
| Debtor. | § | |
| | § | |
| OTIS DEAN NEZAT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 24-8008 |
| | § | |
| GUY PFITZNER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 11)

### I.      BACKGROUND

Otis Dean Nezat ("Nezat") filed this adversary proceeding ("Complaint") (Petition # 24-8008) against Guy Pfitzner, Rosa Pfitzner and Pfitzner Enterprises ("Pfitzner") seeking the recovery of money and property from Pfitzner through two causes of action: fraud and conversion.[1]  The Complaint was filed on November 27, 2024.[2]  Nezat had filed the underlying Chapter 13 bankruptcy case on June 28, 2024 (the "Petition Date") (Petition # 24-80180).[3]

---

[1]  ECF No. 1.
[2]  ECF No. 1; Case No. 24-80180, ECF No. 68.
[3]  ECF No. 1 at 1.

1

The facts alleged which form the basis of the causes of action in the Complaint are based on Nezat's conveyance of his home at 12802 Tri-City Beach Road in Beach City, Texas ("TriCity Home") and the unsigned titles of a number of vehicles (collectively, the "Vehicles" and separately the "Impala," "Ranchero," "Thunderbird," and "Studebaker") and a boat ("Boat").[4]  After Nezat filed this Complaint, Pfitzner filed his Answer to the Complaint on January 6, 2025,[5] and his Motion for Partial Summary Judgment on January 28, 2025.[6]  Pfitzner's Motion for Partial Summary Judgment seeks to establish Nezat's claims are barred by the statute of limitations.[7]  Nezat filed his Response on February 19, 2025.[8]  Pfitzner filed a Reply to Nezat's Response on February 24, 2025.[9]  Nezat filed a Witness and Exhibit list on March 7, 2025,[10] and a Supplemental Response on March 9, 2025.[11]  This Court heard arguments from both parties on March 11, 2025, and took the Motion for Partial Summary Judgment under advisement.[12]

## II.    JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This proceeding has been referred to the Bankruptcy Court under General Order 2012-6.

## III.    LEGAL STANDARD

Rule 7056 of the Federal Rules of Bankruptcy Procedure states that "Fed. R. Civ. P. 56 applies in an adversary proceeding."  Under Federal Rules of Civil Procedure Rule 56(a), "the court shall grant summary

---

[4]  ECF No. 1.
[5]  ECF No. 10.
[6]  ECF No. 11.
[7]  ECF No. 11.
[8]  ECF No. 13.
[9]  ECF No. 16.
[10]  ECF No. 17.
[11]  ECF No. 18.
[12]  ECF No. 19.

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As stated by the Fifth Circuit in *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018):

> A "material" fact is one "that might affect the outcome of the suit under governing law," *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, and a fact issue is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party," *TIG Ins. Co.*, 276 F.3d at 759 (citing *Anderson*, supra). If the moving party initially shows the nonmovant's case lacks support, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co.*, 276 F.3d at 759 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed. R. Civ. P. 56(e)). And importantly "The record must be viewed in the light most favorable to the non-moving party; all justifiable inferences will be drawn in the non-movant's favor. *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir.2002)." *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

## IV.   DISCUSSION

Before this Court is Pfitzner's Motion for Partial Summary Judgment on Nezat's Complaint against Pfitzner. Pfitzner's Motion for Partial Summary judgment seeks to establish that based on the relevant events alleged in Nezat's Complaint, the causes of action are barred by the applicable statute of limitations.[13] The general rule in Texas is that a cause of action accrues when a wrongful act causes some legal injury, even if the injury is not discovered until later, and all resulting damages have not yet occurred. *S.V. v. R.V.,* 933 S.W.2d 1, 4 (Tex. 1996). The fraud claim is governed by Texas Civil Practice and Remedies Code,

---

[13] ECF No. 11 at 2.

Section 16.004, and requires a person to bring suit not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.004. The conversion claim is governed by Texas Civil Practice and Remedies Code, Section 16.003, and requires a person to bring suit not later than two years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.003.

Pfitzner argues the potential causes of action for the TriCity Home, Vehicles, and Boat accrued on the respective dates of sale (outlined in A and B below).[14] Therefore, according to Pfitzner, more than four years elapsed between accrual of Nezat's potential causes of action for fraud and more than two years elapsed between accrual of Nezat's potential causes of action for conversion and the Petition Date.[15]

According to Nezat, the statute of limitations on the TriCity Home did not start until September 2023, when Nezat learned Pfitzner would not pay him the remaining proceeds from the sale of the TriCity Home.[16] Nezat argues the statute of limitations on the Vehicles and the Boat did not begin until Nezat was informed of the sales and Pfitzner failed to make payments of sale proceeds to Nezat.[17] Nezat does not provide a date for when his knowledge of the sale and Pfitzner's failure to make sale proceed payments occurred. Neither party discusses the discovery rule, an exception to the general rule stated above, but Nezat's assertion the statute of limitations did not start until Nezat learned Pfitzner would not pay the funds to Nezat[18] suggests he believes the discovery rule should apply.

As an exception to the general rule, the discovery rule has been applied in limited categories of cases to defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *See Computer*

---

[14] ECF No. 11 at 4-5.
[15] ECF No. 11 at 6.
[16] ECF No. 13 at 6.
[17] ECF No. 13 at 7.
[18] ECF No. 13 at 6.

*Associates International, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex. 1996). The standard for reasonable diligence is not merely based on the plaintiff's knowledge: "it is not enough that [the plaintiff] did not discover he had a cause of action if a reasonable man in his shoes would have." *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983).

Rather, the discovery rule applies when the nature of the injury is inherently undiscoverable, and the injury is objectively verifiable. *HECI Exploration Co., et al. v. Neel, et al.,* 982 S.W.2d 881, 886 (Tex. 1998); *In re Anzalduas Business Park*, L.P., 494 B.R. 704, 712 (Bankr. S.D. Tex., 2013). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734–35 (Tex. 2001). Therefore, inherently undiscoverable encompasses the requirement that the existence of the injury is not ordinarily discoverable, even though due diligence has been used. *Computer Associates Intern., Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex. 1996). An injury is inherently undiscoverable when the injured party is unlikely to discover the injury during the limitations period despite due diligence. *S.V.,* 933 S.W.2d at 7; *Computer Assoc.,* 918 S.W.2d at 456; *In re Coastal Plains, Inc.,* 179 F.3d 197, 215 (5th Cir. 1999). Analysis of this legal question is decided on a categorical rather than case-specific basis: "the focus is on whether a *type* of injury rather than a *particular* injury was discoverable…[thus] some contract breaches may be inherently undiscoverable and objectively verifiable. But those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314-15 (Tex. 2006). The second factor in deciding whether to apply the discovery rule has been to what extent the claim was objectively verifiable. *S.V.,* 933 S.W.2d at 6. "An injury is 'objectively verifiable' if the presence of the injury and the producing wrongful act cannot be disputed." *Howard v. Fiesta Texas Show Park, Inc.,* 980 S.W.2d 716, 720 (Tex.App.-San Antonio 1998, pet. denied).

Under Texas law, while determination of whether an injury is inherently undiscoverable is a question of law, reasonable diligence is an issue of fact. *See Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F.Supp. 3d 562, 586 (W.D. Tex. 2019); *In re Zachry Holdings, Inc.*, 2025 WL 664936 *5 (Bankr. S.D. Tex., 2025). Some courts may determine reasonable diligence as a matter of law "when there is actual or constructive notice, or when information is readily accessible and publicly available." *Hooks v. Samson Lone Star, LP*, 457 S.W.3d 52, 58 (Tex. 2015). Here, the non-movant has alleged that no notice was provided, so reasonable diligence will not be determined as a matter of law.

The sale of the TriCity Home and the sale of the Vehicles and Boat should be analyzed independently. The Court has reviewed all arguments and evidence submitted by the parties, and for the reasons stated herein, denies in part and grants in part the Motion for Partial Summary Judgement.

## A. There is no material factual dispute over when the cause of action and statute of limitations accrued for the TriCity Home.

Nezat purchased the TriCity Home in December 2010 by Warranty Deed with Vendor's Lien.[19] Nezat financed the purchase with a bank loan.[20] According to Pfitzner, in 2013 Nezat was facing foreclosure on the TriCity Home and requested assistance from Pfitzner, who agreed to purchase the TriCity Home for $800,000.[21] Nezat then transferred the TriCity Home to Pfitzner by Warranty Deed in September 2013.[22] Pfitzner paid off the bank's mortgage of $419,497.83 and credited the remainder of the TriCity Home's $800,000 purchase price against the $1 million owed by Nezat to Pfitzner.[23] Nezat disputes he ever owed

---

[19] ECF No. 11-2.
[20] ECF No. 11-2.
[21] ECF No. 11 at 2.
[22] ECF No. 11-3.
[23] ECF No. 11-1 at 1.

Pfitzner $1 million.[24]  According to Nezat, Pfitzner told Nezat he owed $600,000 in the summer of 2023 but never provided any evidence of the debt.[25]  Nezat does not agree he owed Pfitzner $600,000.[26]  In September 2017, Pfitzner transferred the TriCity Home by Warranty Deed with Vendor's Lien to Nezat.[27]  The purchase was subject to a vendor's lien note of $850,000 payable from Nezat to Pfitzner.[28]  Finally, Nezat transferred the TriCity Home to Pfitzner on or about May 8, 2018, by a Warranty Deed in Lieu of Foreclosure.  According to Pfitzner, Nezat agreed to transfer the TriCity Home back to Pfitzner after Nezat failed to make timely payments to Pfitzner.[29]  According to Nezat, Pfitzner agreed to do work on the TriCity Home, and after completing the work Pfitzner would sell the home and use the proceeds to reimburse himself for the work done and for the real estate broker and selling costs, and then pay the remainder to Nezat.[30]  Nezat agreed to transfer the TriCity Home to Pfitzner after Pfitzner began work on the property and Pfitzner asked Nezat if he could obtain collateral for the work.[31]  Nezat argues he did not understand what a deed in lieu of foreclosure was,[32] the property was not posted for foreclosure, and Nezat did not owe any funds to Pfitzner.[33]  Pfitzner then sold the TriCity Home to a third-party buyer on August 17, 2018.[34]

Pfitzner argues the cause of action, and the applicable statute of limitations, accrued no later than August 17, 2018.  Therefore, according to Pfitzner, the statute of limitations period has passed on the

---

[24] ECF No. 13 at 5.

[25] ECF No. 13 at 3.

[26] ECF No, 13 at 3.

[27] ECF No. 11-4.

[28] ECF No. 11-4.

[29] ECF No. 11-1 at 2.

[30] ECF No. 13-2 at 1.

[31] ECF No. 13-2 at 1.

[32] The general rule in Texas, and in other jurisdictions, is that a unilateral mistake is insufficient to warrant setting the contract aside unless the mistake is induced by acts of the other party.  *Interfirst Bank of Abilene, N.A. v. Lull Mfg.*, 778 F.2d 228, 232 (5th Cir. 1985).

[33] ECF No. 13-2 at 1.

[34] ECF No. 11-6.

7

conversion and fraud claims for the TriCity Home.  According to Nezat, Pfitzner never told him he sold the TriCity Home and Nezat only realized the home had been sold when he saw cars at the TriCity Home he did not recognize, and he stopped and visited with the new owners. In September 2023, Nezat tried to finalize his agreements with Pfitzner, and this is when Nezat claims he first realized Pfitzner would not offset and pay him any excess funds.  Nezat argues the cause of action, and the applicable statute of limitations, accrued in September 2023.

Following the general rule, the cause of action would have accrued no later than the August 17, 2018, sale of the TriCity Home from Pfitzner to a third-party buyer.  If the discovery rule exception applies, the cause of action will have accrued in September 2023 when Nezat learned he would not be receiving any funds from the sales executed by Pfitzner.  Whether or not the discovery rule exception applies is based on Nezat's due diligence and whether this type of injury was discoverable.  *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314-15 (Tex. 2006).

In his declaration, Nezat said he trusted Pfitzner, considered him a close friend, and believed Pfitzner was trying to help him.[35]  However, this does not excuse Nezat's exercise of due diligence in the sale of the TriCity Home.  According to Nezat, Pfitzner agreed to do work on the TriCity Home, and after completing the work Pfitzner would sell the home and use the proceeds to reimburse himself for the work done and for the real estate broker and selling costs, and then pay the remainder to Nezat.[36]  Nezat provides no facts that he inquired into the sale of the TriCity Home before he saw cars at the property that he did not recognize and visited with the new owners.[37]  No date is provided for this interaction between Nezat and the new owners.  However, according to the Declaration of Nezat, he attempted to finalize his agreements with Pfitzner in summer 2023,[38] almost five and a half years

---

[35] ECF No. 13-2 at 2.
[36] ECF No. 13-2 at 1.
[37] ECF No. 13-2 at 2.
[38] ECF No. 13-2 at 2.

after he last transferred the TriCity Home to Pfitzner.  As a result of this failure to exercise reasonable diligence, the discovery rule does not apply to the present case.  Pfitzner's Motion for Partial Summary Judgment should be granted with respect to the TriCity Home.

### B. There is a factual dispute over when the cause of action and statute of limitations accrued for the Vehicles and Boat.

Nezat alleges he provided Pfitzner with unsigned certificates of title to a Studebaker, Thunderbird, Impala, Ranchero, and a Boat with an appraised value from Anahuac Bank of $318,000.[39]  At auction, Pfitzner sold the Impala and the Ranchero in June 2015 and the Thunderbird in November 2020.[40]  Pfitzner sold the Studebaker back to Nezat in August 2020.[41]  According to Pfitzner, Nezat made payments to Pfitzner until April 2021, and then returned the Studebaker to Pfitzner in poor condition.[42]  The Studebaker is still in Pfitzner's possession.[43]  Pfitzner argues the cause of action, and the applicable statute of limitations, accrued on the dates the Vehicles were sold.[44]  Pfitzner sold the Boat in June or July of 2015.[45]  Pfitzner argues the cause of action, and the applicable statute of limitations, accrued in June or July of 2015.[46]  Therefore, according to Pfitzner, the statute of limitations period has passed on the conversion and fraud claims for the Impala, Ranchero, and the Boat, and on the conversion claim for the Thunderbird.[47]  The claim for fraud based on the sale of the Thunderbird and the claims for fraud and conversion related to the Studebaker remain.[48]

---

[39] ECF No. 13 at 2.
[40] ECF No. 11-7.
[41] ECF No. 11-8.
[42] ECF No. 11 at 4.
[43] ECF No. 11 at 4.
[44] ECF No. 11 at 5.
[45] ECF No. 11-9.
[46] ECF No. 11 at 5.
[47] ECF No. 11 at 6.
[48] ECF No. 11 at 6.

Nezat is not sure how the certificates of title for the Vehicles were signed.[49]  According to Nezat, the Vehicles were provided to Pfitzner as additional collateral and sold without Nezat's consent.[50]  In contrast, Pfitzner states the Vehicles and Boat were transferred by Nezat to pay down his debt to Pfitzner.[51]  Nezat's Response states:

> Nezat provided the titles to the Vehicles because Pfitzner told Nezat that he had a buyer for the Vehicles. Nezat wanted to sell the Vehicles and Pfitzner had allegedly provided the solution for a sale. Pfitzner told Nezat that Pfitzner would sell all of the assets for him. Nezat admits in paragraph 10 that he much later learned that Pfitzner sold the Impala, Ranchero and Thunderbird at auction. Pfitzner did not inform Nezat of such sales.[52]

Nezat's Response he "wanted to sell the Vehicles and Pfitzner had allegedly provided the solution for a sale" seemingly contradicts the assertion the Vehicles were sold without Nezat's consent.[53]  Nezat argues the statute of limitations did not begin until Nezat was informed of the sale of the Vehicles and Pfitzner failed to make payments back to Nezat.[54]  More information is needed from the parties to determine if the Studebaker transaction should have put Nezat on inquiry notice with respect to the other Vehicles in Pfitzner's possession.  Because the relationship between the parties is unclear, the Vehicles were vintage (and may have appreciated with time), and the titles were unsigned, a factual inquiry is needed to determine when the cause of action and applicable statute of limitations accrued and whether Nezat exercised due diligence once he delivered the titles to the Vehicles.

Nezat argues the Boat was also part of the collateral provided to Pfitzner for the work he was completing on the TriCity Home, and no

---

[49]  ECF No. 13 at 3.
[50]  ECF No. 13 at 2-3.
[51]  ECF No. 11 at 3.
[52]  ECF No. 13 at 5-6.
[53]  ECF No. 13 at 2; ECF No. 13 at 5-6.
[54]  ECF No. 13 at 7.

notice was given by Pfitzner to Nezat about the sale of the Boat.[55]  The agreement here between Nezat and Pfitzner is not clear.  For example, it is not clear if Nezat provided Pfitzner with the Boat title and whether that title was signed.  It is also not clear if the Boat was similarly situated to the cars in terms of age.  As a result of the lack of information, a factual inquiry is needed to determine when the cause of action and applicable statute of limitations accrued for the Boat.

### C. The Proof of Claim Issue.

In Nezat's Supplemental Response, Nezat argues under Texas Civil Practice & Remedies Code Section 16.069 he should be able to file a counterclaim or crossclaim against Pfitzner in response to Proof of Claim 7-1.[56] Tex. Civ. Prac. & Rem. Code § 16.069.  In the underlying Chapter 13 case (Petition # 24-80180), Pfitzner filed a Proof of Claim on September 4, 2024, for $496,130.03 on Nezat's Homestead.[57]  On September 11, 2024, Nezat objected to Proof of Claim 7-1.[58] Pfitzner filed a Response on October 14, 2024.[59]  Nezat brought the adversary proceeding (Complaint) on November 27, 2024.[60] To file a counterclaim or crossclaim under Section 16.069, the counterclaim must arise out of the same transaction or occurrence that is the basis of the action.  Tex. Civ. Prac. & Rem. Code § 16.069.  To determine what constitutes a "transaction," the Court applies the logical relationship test, which asks "whether the essential facts on which the claims are based are significantly and logically relevant to both claims."  *Wells v. Dotson*, 261 S.W.3d 275, 281 (Tex.App.-Tyler, 2008).  Here, Nezat argues the transfer of the TriCity Home to Pfitzner and the purchase of the home at 8438 Ocean Drive, Baytown, Texas 77520 ("Ocean Drive Home") was part of the same transaction because Nezat would not have purchased the Ocean Drive Home but for the transfer of the TriCity Home to

---

[55] ECF No. 13 at 7.
[56] ECF No. 18 at 4.
[57] Case No. 24-80180, Claim 7-1.
[58] Case No. 24-80180, ECF No. 36.
[59] Case No. 24-80180, ECF No. 48.
[60] Case No. 24-80180, ECF No. 68.

Pfitzner.[61]  Nezat has provided no other evidence to show there are significant related facts between the Proof of Claim and the TriCity Home, for example, a monetary connection.[62]  The fact Nezat purchased the Ocean Drive Home after transferring the TriCity Home does not make the two actions part of the same transaction under the logical relationship test.

This Court will grant leave for the parties to combine the claim objection (Petition # 24-80180) and the adversary proceeding (Petition # 24-08008).

## V.    CONCLUSION

The Motion for Partial Summary Judgment is denied in part and granted in part.

As a result of Nezat's failure to exercise reasonable diligence with respect to the TriCity Home after transferring it by a warranty deed in lieu of foreclosure, the discovery rule does not apply, and Pfitzner's Motion for Partial Summary Judgment is granted.

Given the factual dispute that exists regarding the relationship between Nezat and Pfitzner and Nezat's exercise of due diligence concerning the sale of the Vehicles and Boat, the Motion for Partial Summary Judgment is denied.

Leave is granted for the parties to combine the claim objection and adversary proceeding.

---

[61] ECF No. 18 at 2-3.

[62] The basis of Nezat's Objection (Case No. 24-80180, ECF No. 51) to Pfitzner's Proof of Claim (Case No. 24-80180, ECF No. 47-1) is that the Renewal, Modification and Extension of Real Estate Note and Lien on the homestead for $160,000 is void and not enforceable (Case No. 24-80180, ECF No. 51 at 2). However, Nezat does not demonstrate whether or how this $160,000 is linked to the TriCity Home.

Therefore, it is

ORDERED that the Motion for Partial Summary Judgment is granted in part and denied in part for the reasons stated herein.  A separate order will issue.


SIGNED 03/26/2025


Alfredo R Pérez
United States Bankruptcy Judge